UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE OHIO CASUALTY INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| JAMES A. REED, LINDA LOU MULL REED, MASTERWEAR, INC., WILLIAM J. CURE, ELIZABETH J. CURE, UNITED STATES FIDELITY AND GUARANTY COMPANY, HOOSIER INSURANCE COMPANY, STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, CHARLES MASON, RUBY PRUITT d/b/a RUBY'S DINER, BILLY J. CUNNINGHAM, MARY ANN CUNNINGHAM, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, and CITY OF MARTINSVILLE, INDIANA, | )<br>)<br>)<br>)<br>) CASE NO. 1:04-cv-2027-DFH-WTL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

ENTRY ON MOTION TO INTERVENE BY HOMETOWN
TRANSMISSION AND THE NEALS

This is an action for interpleader and declaratory judgment filed by Ohio Casualty Insurance Company. The dispute is over who should bear the costs resulting from chemical pollution of the soil, groundwater, and air from a commercial laundry and dry cleaning business in downtown Martinsville, Indiana. Ohio Casualty's policyholders, Masterwear, Inc. and its owner James Reed, along

with William Cure (the owner of the Masterwear property), have been named potentially responsible parties for the contamination.

The United States Environmental Protection Agency, the Indiana Department of Environmental Management, and other entities already have incurred significant clean-up costs at the Masterwear site. The City of Martinsville's public water supply has been severely disrupted. Several persons and businesses located near the site allege that they have suffered property damage and bodily injuries from the pollution. At least three parties have filed individual suits against Masterwear, the Reeds, and the Cures, and those related actions are pending in this district. See Cause Nos. 1:04-cv-1616 (suit brought by Billy J. and Mary Ann Cunningham), 1:04-cv-1994 (suit brought by City of Martinsville), and 1:05-cv-0373 (suit brought by United States).

Ohio Casualty filed this action in December 2004 seeking to deposit the full liability limit of its three Masterwear policies (minus any indemnity costs already incurred) with the court and to obtain an order preventing the named defendants from demanding indemnification for any claims they might have against Masterwear and/or the Reeds. Ohio Casualty named as defendants the potentially responsible parties, their insurers, the government agencies charged with cleaning up the pollution, the City of Martinsville, and several persons who had contacted Ohio Casualty seeking indemnification. The defendants have filed numerous counterclaims, as well as cross-claims against one another.

On January 23, 2006, Hometown Transmission, Inc. ("Hometown"), an auto body repair shop located in Martinsville, and Samuel and Delores Neal (collectively, "the Neals"), the shop's only shareholders and operators, moved to intervene in this action as defendants, counterclaimants, and cross-claimants pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. See Docket No. 331. Hometown and the Neals allege that their property at 77 West Morgan Street is located near and down-gradient from the Masterwear site. They allege that pollution from the Masterwear site has migrated to their property, resulting in damage to the business value of Hometown and injury to the health and welfare of the Neals.

State Auto has objected to the motion as untimely. Its objection has been joined by all other parties to the action except claimant-defendants Ruby Pruitt, Charles Mason, and the Cunninghams. See Obj. Br. at 1 n.1. For the reasons explained below, the motion to intervene is granted.

*Discussion*

Rule 24(a) governs intervention as of right and states in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Persons seeking intervention under Rule 24(a)(2) have the burden of establishing that: (1) their motion to intervene was timely; (2) they possess an interest related to the subject matter of the action; (3) disposition of the action threatens to impair that interest; and (4) the existing parties fail to represent adequately their interest. *United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003), citing *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001). Failure to satisfy any one of these four factors is a sufficient ground for denying intervention. *BDO Seidman*, 337 F.3d at 808, citing *Vollmer*, 248 F.3d at 705.

Hometown and the Neals easily satisfy the latter three elements required for intervention. Intervention is particularly appropriate in interpleader actions where a number of persons make competing claims to limited funds, such as the available insurance coverage in this case. See, *e.g.*, *Pure Oil Co. v. Ross*, 170 F.2d 651, 653 (7th Cir. 1948) (reversing denial of motion to intervene as of right in interpleader action; noting that proposed intervenor-defendant would be denied his day in court if funds were paid out completely to the other claimant-defendants). Several parties in this suit assert claims to the policy proceeds of Ohio Casualty and the other insurers. The interests of these claimants are in direct conflict with the interests of the proposed intervenors.

The controversial issue is whether Hometown and the Neals made their motion to intervene in a timely manner. The movants argue that their motion is timely because the court has not yet made a determination on Ohio Casualty's

motion to deposit funds or the coverage obligations of the other insurers. The movants also argue that litigation and discovery concerning the claimants, their individual damages, and their entitlement to any deposited funds are in very early stages.

The objecting parties contend that Hometown and the Neals were made aware of their interests in this suit when IDEM performed testing at the Hometown property in July 2003 or, at the very latest, when Ohio Casualty filed its original complaint in this action in December 2004. The objectors argue that if intervention is permitted, they will be severely prejudiced because of the amount of discovery that has already occurred and the additional environmental testing that will need to be done at the Hometown property.

In deciding a motion to intervene as of right under Rule 24(a)(2), the test for timeliness is "essentially one of reasonableness: 'potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly.'" *Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 321 (7th Cir. 1995) (reversing denial of intervention as untimely), quoting *Nissei Sangyo America, Ltd. v. United States,* 31 F.3d 435, 438 (7th Cir. 1994) (also reversing denial of intervention as untimely). Timeliness is measured from the point when the potential intervenors knew or should have known that their interests might be adversely affected by the outcome of the litigation. That point in time may or may not correspond to the date when the

-5-

lawsuit was filed or the date when the intervenors learned of the suit's existence. *Reich*, 64 F.3d at 321.

In evaluating timeliness, the court also must consider the prejudice to the original parties if intervention is permitted and the prejudice to the intervenors if the motion is denied. *Reich*, 64 F.3d at 321, citing *Shea v. Angulo*, 19 F.3d 343, 349 (7th Cir. 1994). Prejudice to existing parties is measured at the time that the motion to intervene was filed; it is not based on the current status of the litigation. *Reich*, 64 F.3d at 322 (reversing denial of intervention; motion to intervene was timely even where discovery was set to end shortly because intervenors could have completed discovery under existing deadlines if district court had granted motion). Finally, the court may consider any unusual circumstances warranting intervention, such as the desirability of avoiding a multiplicity of lawsuits. See *Shea*, 19 F.3d at 349, citing *South v. Rowe*, 759 F.2d 610, 612-13 (7th Cir. 1985). Deciding whether a motion to intervene is timely is "committed to the sound discretion of the district court." *Shea*, 19 F.3d at 349.

Several factors weigh in favor of granting the motion to intervene here. First, Hometown and the Neals would be severely prejudiced if their motion were denied. Although they could file a separate suit in state court, their ability to recover any damages from such a suit is, realistically speaking, quite low. The proceeds from Ohio Casualty's three policies (and the potential proceeds from the insurer-defendants who dispute coverage) appear to be the only substantial assets

available to the claimants involved in this dispute. Masterwear has been dissolved as a corporation. There is no indication that the Reeds or the Cures have sufficient personal assets to cover the damages alleged. See Rep. Exs. A & B.

Second, the evidence indicates that Hometown and the Neals did not become aware that their interests might be impaired by this litigation until only a few weeks before they moved to intervene. The objecting parties have presented evidence that air samples were taken inside Hometown Transmission as part of IDEM's preliminary assessment/site inspection in July 2003. See Obj. Ex. 1 at 3-8. With the assistance of IDEM, EPA and its contractors conducted additional rounds of indoor air sampling, including testing at Hometown, in late September 2003. See Obj. Ex. 2 at 6. The objecting parties also point out that Hometown affirmatively refused to allow additional air sampling after December 2004 by Astbury Environmental Engineering (the environmental project manager hired by Ohio Casualty to perform remedial work at the Masterwear site). See Obj. Ex. 3 at 18.

Mr. Neal acknowledges knowing that indoor air samples were collected at Hometown and in his neighborhood, but he has testified that he was told by both IDEM and Astbury that the air effects of the pollution were not a significant problem and that the main focus of the clean-up at Masterwear was going to be on groundwater. Neal Aff. ¶ 9. He testified he did not allow Astbury to test his

property because he was concerned that Masterwear would use the test data to argue that Hometown was itself a contaminant source. *Id.*, ¶ 10.

Regardless, the objecting parties' documentary evidence shows only that Hometown and the Neals were made aware of contamination at the Masterwear site a significant amount of time prior to filing their motion to intervene in this lawsuit. The evidence does not shed any light on the crucial issue in deciding that motion's timeliness, which is when Hometown and the Neals learned that their interests in recovering from Masterwear might be impaired by this interpleader action. See *Reich*, 64 F.3d at 321 ("But we do not necessarily put potential intervenors on the clock at the moment the suit is filed or even at the time they learn of its existence. Rather, we determine timeliness from the time the potential intervenors learn that their interest might be impaired.").

Mr. Neal testified that he did not receive notice of this suit when it was filed. He first learned of the suit during a discussion with claimant-defendant Ruby Pruitt in July 2005. Even at that time, Mr. Neal understood that the suit was being brought by neighbors to require Masterwear to clean up pollution in the neighborhood. He believed that the suit would resolve any pollution problems that might have an impact on Hometown. Neal Aff. ¶ 3. In August 2005, Mr. Neal received a subpoena from the Cures' counsel commanding him to permit inspection of the soil and groundwater at his property by their own environmental

expert.  He allowed access, subject to the condition that he receive a copy of the test results.  *Id.*, ¶ 4.

Mr. Neal received the test data in November 2005.  He then learned for the first time that the ground at his property was chemically polluted.  Neal Aff. ¶ 6.  Even at that time, however, the report was not clear as to the source of the contamination.  On January 11, 2006, he received results from tests performed by the Cures' environmental expert on the soil and groundwater outside of the Hometown building.  After reviewing those results with counsel, Mr. Neal directed his attorneys to file an appropriate action to protect Hometown from any damages allegedly caused by contamination at the Masterwear site.  The motion to intervene was filed January 23rd, less than two weeks later.  Mr. Neal contends that he did not know, nor could he have known, the source of any pollution on his property until receiving the January 2006 test results, in light of his discussions with Astbury representatives who had told him that there could be several possible contaminating sources in his neighborhood.  *Id.*, ¶¶ 6-7.  His counsel also point out the risks of filing motions to intervene or other motions in federal court where the party does not (yet) have a reasonable factual basis for doing so.

Considering this sequence of events, and the movants' uncertainty about the type, extent, and source of their pollution until late 2005 or early 2006, the motion to intervene was not untimely.  Hometown and the Neals filed their motion less than two weeks after receiving the January 2006 test results.  They acted

promptly after establishing a reasonable basis for their belief that Masterwear was responsible for the pollution on their property and that participation in this lawsuit was necessary for any recovery.

In addition, the court also considers the "unusual circumstances" presented in this interpleader action. A great deal of efficiency can be gained by consolidating Hometown's and the Neals' claims with the claims already asserted by the claimant-defendants in this suit. Similar issues must be resolved for all claimants. A separate proceeding would be unnecessarily duplicative.

Finally, the objecting parties have not demonstrated that any potential prejudice to them outweighs the certain prejudice that Hometown and the Neals would suffer if they were not permitted to intervene. The objectors point out that some substantive motions have been briefed and that some written discovery and depositions have been taken in this action and the related liability actions.

Hometown and the Neals have moved to intervene in only this interpleader action. Their intervention therefore will not delay resolution of any pending motions in other cases.[1] Even in this case, Hometown and the Neals have agreed not to seek leave to submit a brief in response to Ohio Casualty's motion to

---

[1] The objecting parties identified pending motions for summary judgment in the related *Cunningham* action as an example of substantive motions that were ripe for decision and could be delayed by permitting intervention in this case. Those motions were resolved by Judge Tinder on March 1, 2006. See Cause No. 1:04-cv-1616 (Docket No. 65).

deposit funds. Motion ¶ 19. Nevertheless, the deadline for filing dispositive motions in this case had not yet expired at the time this motion to intervene was filed. See Docket No. 330. The intervenors must be given some additional time to respond to the other pending motions, although this should not create substantial delay. The intervenors are represented by counsel who are already active in the litigation in representing claimant-defendants Pruitt and Mason. On many issues (including for example, available coverage under other insurer policies), the intervenors' interests are aligned and have been well-represented.

With respect to the discovery that already has occurred, the evidence does not show that any additional required discovery will be unnecessarily prejudicial. The parties would need to conduct individualized discovery on claimant damages even if a separate action were to be filed. The same holds true for any additional environmental testing that might be required of the Hometown property. Since intervenors' counsel have been participating in this litigation from the beginning, the court expects that these intervenors may be treated as if they had participated in discovery from the beginning. Also, any discovery specific to the intervenors is likely to be limited in scope, and would have been conducted in any event if they had filed a separate suit.

*Conclusion*

In evaluating the timeliness of a motion to intervene as of right, "[t]he reason for requiring promptness is 'to prevent a tardy intervenor from derailing a lawsuit

-11-

within sight of the terminal.'" *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1027 (7th Cir. 2006), quoting *Lefkovitz*, 395 F.3d at 778, quoting in turn *United States v. South Bend Community School Corp.*, 710 F.2d 394, 396 (7th Cir. 1983). Permitting Hometown and the Neals to intervene in this interpleader action at this time would not derail a lawsuit that is anywhere near the "terminal." Cf. *Roberts v. Metropolitan Life Ins. Co.*, 94 F.2d 277, 281 (7th Cir. 1938) (district court properly denied motion to intervene more than three months after interpleader suit was litigated and final judgment was entered, even though court had not yet distributed funds in its custody). Accordingly, the motion to intervene as of right (Docket No. 331) is granted.

The objecting parties have requested that the court, in the event intervention was to be granted, schedule a status conference to discuss possible revisions to the case management plan and schedule. The court must also address the (presumably brief) time to be given to intervenors Hometown and the Neals to respond to any pending motions in this action, excluding the Ohio Casualty motion for which they have agreed that no further briefing is necessary.

The court will request the magistrate judge to schedule a conference with the parties to resolve these matters and to establish prompt, appropriate deadlines for the parties to respond to the intervenors' answer, counterclaim, and cross-claim attached to their motion (Docket No. 331, Ex. A), which will be deemed filed as of the date of this entry. The court will turn its attention to resolving promptly

the policy coverage and indemnification issues raised by the pending Ohio Casualty motion and the related motion for partial summary judgment filed by Mason, Pruitt, and the Cunninghams (Docket No. 227).

So ordered.

Date:  June 22, 2006

*David F. Hamilton*

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Sue Hendricks Bailey
UNITED STATES ATTORNEY'S OFFICE
sue.bailey@usdoj.gov

Thomas Andrew Benson
U.S. DEPARTMENT OF JUSTICE - ENVIRONMENTAL ENFORCEMENT
thomas.benson@usdoj.gov

Theodore J. Blanford
HUME SMITH GEDDES GREEN & SIMMONS
tblanford@humesmith.com

Michael E. Brown
KIGHTLINGER & GRAY
mbrown@k-glaw.com

Stephen P. Brown
PLUNKETT & COONEY PC
sbrown@plunkettcooney.com

Charles W. Browning
PLUNKETT & COONEY, P.C.
cbrowning@plunkettcooney.com

Adam A. Carroll
HUME SMITH GEDDES GREEN & SIMMONS
acarroll@humesmith.com

Michael D. Chambers
SOMMER BARNARD ATTORNEYS, PC
mchambers@sommerbarnard.com

Frank J. Deveau
SOMMER BARNARD ATTORNEYS, PC
fdeveau@sommerbarnard.com

Jonathan P. Emenhiser
PLEWS SHADLEY RACHER & BRAUN
jemenhiser@psrb.com

Peter Ralph Foley
FOLEY FOLEY & PEDEN
peterffplaw@insightbb.com

David R. Gillay
BARNES & THORNBURG LLP
david.gillay@btlaw.com

Alan David Greenberg
U.S. DEPARTMENT OF JUSTICE
alan.greenberg@usdoj.gov

Edward S. Griggs
BARNES & THORNBURG LLP
sean.griggs@btlaw.com

Kandi Kilkelly Hidde
BINGHAM MCHALE
khidde@binghammchale.com

Barbara A. Jones
BINGHAM MCHALE, LLP
bjones@binghammchale.com

Timothy J. Junk
INDIANA STATE ATTORNEY GENERAL
tjunk@atg.state.in.us

Bruce L. Kamplain
NORRIS CHOPLIN & SCHROEDER LLP
bkamplain@ncs-law.com

Michelle H. Kazmierczak
KIGHTLINGER & GRAY
mkazmierczak@k-glaw.com

Ginny L. Peterson
KIGHTLINGER & GRAY
gpeterson@k-glaw.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Peter M. Racher
PLEWS SHADLEY RACHER & BRAUN
pracher@psrb.com

Jana K. Strain
PRICE WAICUKAUSKI RILEY & DEBROTA
jstrain@price-law.com

Brad R. Sugarman
SOMMER BARNARD ATTORNEYS, PC
bsugarman@sommerbarnard.com

Karen E. Torrent
UNITED STATES DEPARTMENT OF JUSTICE
karen.torrent@usdoj.gov

William C. Wagner
SOMMER BARNARD ATTORNEYS, PC
wwagner@sommerbarnard.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI RILEY & DEBROTA
rwaicukauski@price-law.com

Jill E. Zengler
UNITED STATES ATTORNEY'S OFFICE
jill.zengler@usdoj.gov